# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID C. PATKINS,<br><br>    Petitioner,<br><br>    v.<br><br>K. HOLLAND, Warden,<br><br>    Respondent. | Case No. 1:13-cv-01591-LJO-SAB-HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner filed the instant petition on October 3, 2013. He is currently serving a sentence of 59 years to life on a murder conviction sustained on October 9, 2002, in Riverside County Superior Court. (Resp't's Mot. to Dismiss, Ex. A.) He challenges a disciplinary hearing held on July 24, 2012, in which he was found guilty of obscenity and assessed a thirty day credit forfeiture. (Petition, Ex. A.)

On February 7, 2014, Respondent filed a motion to dismiss the petition for lack of jurisdiction and failure to state a cognizable claim for relief. Petitioner filed an opposition on February 20, 2014, and Respondent filed a reply on March 4, 2014.

///

///

1

**I.**

**DISCUSSION**

**A.     Procedural Grounds for Motion to Dismiss**

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases. Further, the Rules Governing Section 2254 Cases permit the respondent to file a motion to dismiss in lieu of filing an answer. The Advisory Committee Notes states:

> The revised rule does not address the practice in some districts, where the respondent files a pre-answer motion to dismiss the petition. But revised Rule 4 permits that practice and reflects the view that if the court does not dismiss the petition, it may require (or permit) the respondent to file a motion.

Adv. Comm. Note to Rule 5 of the Rules Governing Section 2254 Cases (2004 adoption).

Thus, a respondent can file a motion to dismiss after the court orders a response. Because Respondent has not yet filed a formal answer, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

**B.     Jurisdiction**

A federal court may only grant a petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution . . . ." 28 U.S.C. § 2254(a). A habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement. Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991) (quoting Preiser v. Rodriguez, 411 U.S. 475, 485 (1973)); Adv. Comm. Notes to Rule 1 of the Rules Governing Section 2254 Cases. In contrast, a civil rights action pursuant to 42 U.S.C. § 1983 is the proper method for a prisoner to challenge the conditions of that confinement rather than the fact or length of the custody. McCarthy v. Bronson, 500 U.S. 136, 141-42 (1991); Preiser, 411 U.S. at 499; Badea, 931 F.2d at 574; Adv. Comm. Notes to Rule 1 of the Rules Governing Section 2254 Cases.

With respect to prison disciplinary and administrative proceedings, it is established that a constitutional claim concerning the application of rules administered by a prison or penal administrator that challenges the duration of a sentence is a cognizable claim of being in custody

in violation of the Constitution pursuant to 28 U.S.C. § 2254. See, e.g., Superintendent v. Hill, 472 U.S. 445, 454 (1985) (determining a procedural due process claim concerning loss of time credits resulting from disciplinary procedures and findings). The Supreme Court has held that challenges to prison disciplinary adjudications that have resulted in a loss of time credits must be raised in a federal habeas corpus action and not in a § 1983 action because such a challenge is to the very fact or duration of physical imprisonment, and the relief sought is a determination of entitlement of immediate or speedier release. Preiser, 411 U.S. at 500.

It is established in this circuit that where a successful challenge to a disciplinary hearing or administrative sanction *will not necessarily* shorten the overall length of confinement, then habeas jurisdiction is lacking. Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir.2003) ("holding . . . that habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence"). In Ramirez, a prisoner sought relief pursuant to § 1983 for allegedly unconstitutional disciplinary proceedings that resulted in administrative segregation. Id. It was held that § 1983 was the appropriate remedy because the alleged constitutional errors did not affect the overall length of the prisoner's confinement; success in the § 1983 action would not necessarily result in an earlier release from incarceration, and the § 1983 suit did not intrude upon the core or "heart" of habeas jurisdiction. Ramirez, 334 F.3d at 852, 858.

The court in Ramirez went further and considered the related question of the extent of habeas corpus jurisdiction, expressly stating that its holding "also clarifies our prior decisions addressing the availability of habeas corpus to challenge the conditions of imprisonment." 334 F.3d at 858. The court reviewed the decisions in Bostic v. Carlson, 884 F.3d 1267 (9th Cir.1989) and Neal v. Shimoda, 131 F.3d 818 (9th Cir.1997) and concluded as follows:

> Our decision in Neal v. Shimoda, 131 F.3d 818 (9th Cir.1997), illustrates the importance of measuring the likelihood that a suit under § 1983 will affect the length of the prisoner's confinement. In Neal, two state prisoners filed suits under § 1983 alleging that they were classified as sex offenders in violation of the Due Process and Ex Post Facto guarantees. Id. at 822–23. Among other harms, both inmates argued that the classification affected their eligibility for parole. Id. We held that Heck did not require the inmates to invalidate their classification before bringing suit under § 1983, because a favorable judgment "will in no way guarantee parole or necessarily shorten their prison sentences by a single day." Id.

> at 824. The prisoner suits did not seek to overturn a disciplinary decision that increased their period of incarceration. Rather, a successful § 1983 action would provide only "a ticket to get in the door of the parole board." Id. A favorable judgment, therefore, would not "undermine the validity of their convictions," or alter the calculus for their possible parole. Id.
>
> Neal makes clear that under Preiser habeas jurisdiction is proper where a challenge to prison conditions would, if successful, necessarily accelerate the prisoner's release. Thus, Neal accords with our holding here that habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence.

Ramirez, 334 F.3d at 858–59.

Thus, habeas jurisdiction might be predicated on some "conditions" claims affecting parole only if there is a sufficient nexus to the length of imprisonment or a sufficient likelihood of affecting the overall length of a prisoner's confinement. Docken, 393 F.3d at 1030–31. However, the appellate court emphasized that habeas jurisdiction is absent where the challenge will not necessarily shorten the overall sentence. Ramirez, 334 F.3d at 859. In Ramirez, expunging the disciplinary action was not shown to be likely to accelerate eligibility for parole; rather, success there would have meant only an opportunity to seek parole from a board that could deny parole on any ground already available to it. Therefore, the suit did not "threaten to advance the parole date." Id.

Additionally, a liberty interest arises under state law when an inmate is subjected to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484 (1995). Nevertheless, the mere possibility of denial of parole at some later time, where one of the factors for parole consideration is serious misconduct, does not amount to the denial of a liberty interest. In Sandin, the U.S. Supreme Court concluded that a possible loss of credits due to a disciplinary conviction was insufficient to give rise to a liberty interest where "[n]othing in [the State's] code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, even though misconduct is by regulation a relevant consideration." Sandin, 515 U.S. at 487. The Court went on to note that "[t]he decision to release a prisoner rests on a myriad of considerations," and an inmate is generally "afforded procedural protection at this parole hearing in order to explain the circumstances behind his misconduct record." Id. at 487. The Court held

1    that "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to
2    invoke the procedural guarantees of the Due Process Clause." Id.  After Sandin, in order to
3    demonstrate a liberty interest, an inmate must show that a disciplinary conviction will inevitably
4    lengthen the duration of the inmate's incarceration. Id.  In this case, Petitioner cannot make such
5    a showing.

6    First, as noted by Respondent, Petitioner was convicted of murder and sentenced to an
7    indeterminate term of 59 years to life. (Resp't's Mot. to Dismiss, Ex. 1.) Under California law,
8    he cannot earn credits against his sentence. Cal. Penal Code § 2933.2(a) (". . . any person who is
9    convicted of murder, as defined in Section 187, shall not accrue any credit, as specified in
10   Section 2933 or Section 2933.05"); see also People v. Duff, 50 Cal.4th 787, 794 (2010).
11   Therefore, Petitioner has not earned any sentence-reducing credits of which prison authorities
12   could take.

13   Rather, any postconviction good time credits are relevant to the determination of
14   Petitioner's minimum eligible parole date ("MEPD"). See Cal.Code Regs., tit. 15, § 2400 ("The
15   amount of good conduct credit that a prisoner sentenced for first or second degree murder may
16   earn to reduce the minimum eligible parole date is established by statute .... The department will
17   determine the minimum eligible parole date. The length of time a prisoner must serve prior to
18   actual release on parole is determined by the board. The amount of postconviction credit a
19   prisoner may earn to reduce the length of time prior to release on parole is determined by the
20   board."); Alley v. Carey, 408 Fed.Appx 11, 12–13 (9th Cir. Nov.5, 2010) (unpublished) (good
21   time credit affects minimum eligible parole date) (may be cited pursuant to Rule 36–3 of the
22   Ninth Circuit Rules); In re Jenkins, 50 Cal.4th 1167, 1179, 116 Cal.Rptr.3d 790, 801, 240 P.3d
23   260 (2010) ("[T]he connection between [custody] credits and actual release is greatly
24   attenuated.... [T]o the extent those inmates [with life terms] ... receive credits towards their
25   sentence, the credits go only towards advancing their minimum eligible release date, not their
26   actual release from prison.").

27   When a prisoner reaches his minimum eligible parole date, postconviction credits are not
28   awarded unless and until the Board of Parole Hearings ("Board") grants parole. See Cal.Code.

1  Regs., tit. 15, §§ 2400, 2403, 2410, 2411; Garnica v. Hartley, 2010 WL 3069309, at *2 (E.D.Cal.
2  Aug.4, 2010) ("Once a prisoner reaches his [minimum eligible parole date], ... good conduct
3  credits are not awarded until parole is actually granted by the parole board."); see also In re
4  Bush, 161 Cal.App.4th 133, 141, 74 Cal.Rptr.3d 256 (Cal.App. 1 Dist.2008) ("When a life
5  prisoner is found suitable for parole, the Board sets a release date by calculating a 'base term' for
6  the offense, adjusted by any credits to which the prisoner is entitled.").  However, those credits
7  are discretionary; Petitioner is not "entitled" to them.  See Cal.Code Regs., tit. 15, § 2410(a) (life
8  prisoners "may" earn post-conviction credits).

9      In this case, Petitioner has not reached his MEPD, which according to Respondent is
10 scheduled to occur in 2059, and custody credits may be applied at that time to advance the
11 MEPD.  Nevertheless, reaching the MEPD does not guarantee release since Petitioner must still
12 be granted parole, and this is a separate determination to be made by the Board.  The Board is
13 required by California law to consider multiple factors in assessing whether an individual inmate
14 is suitable for parole.  The Board may consider factors as wide-ranging as the original crime, an
15 inmate's criminal and social history, his conduct in prison, any psychological evaluations,
16 Petitioner's efforts at rehabilitation, his remorse and understanding of the crime and its effects of
17 the victims, as well as any parole plans he may have. Cal. Code Regs., tit. 15, § 2402(b)-(d).
18 Any parole decision depends on "an amalgam of elements, some of which are factual but many
19 of which are purely subjective appraisals by the Board members based on their experience with
20 the difficult task of evaluating the advisability of parole release." Greenholtz v. Inmates of
21 Nebraska Corr. & Penal Complex, 442 U.S. 1, 9–10, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).  All
22 relevant information available to the parole panel, positive and negative, must be considered.
23 Cal. Code Regs., tit. 15, § 2402(b).  The presence of one negative factor does not foreclose a
24 favorable parole determination.  Id.  Rather, the ultimate decision is whether the inmate will pose
25 an unreasonable risk of danger to society if released.  Cal. Code Regs., tit. 15, § 2402(a).

26     Therefore, Petitioner fails to demonstrate that the instant disciplinary proceeding will
27 necessarily shorten the duration of his confinement.  Whether Petitioner's disciplinary violation
28 will constitute one of the myriad of factors that the Board will consider at a possible parole

hearing decades from now, or even factor in at all in a decision, is far too attenuated to invoke the protections of due process. Sandin, 515 U.S. at 487. The disciplinary violation can hardly be considered so pivotal to the question of granting parole that one could conclude that a sufficient nexus exists between it and the length of imprisonment such that a sufficient likelihood exists of it affecting the overall length of Petitioner's confinement. Docken, 393 F.3d at 1030–31. Likewise, Petitioner's claim that the violation may affect the amount of credit he is awarded if he is granted parole in the future is far too speculative to invoke habeas jurisdiction. For the foregoing reasons, habeas jurisdiction does not lie in this case, and the petition should be dismissed. Ramirez, 334 F.3d at 859.

**RECOMMENDATION**

Accordingly, the Court HEREBY RECOMMENDS that Respondent's motion to dismiss be GRANTED and the petition for writ of habeas corpus be DISMISSED with prejudice for lack of jurisdiction.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, Petitioner may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __March 17, 2014__

UNITED STATES MAGISTRATE JUDGE